IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| DAVID WAYNE SMITH, Prison ID # 2010208, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 1:17-CV-0093-BL |
| LINDA GONZALES, | § § § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

The Court has under consideration Defendant's Motion to Dismiss (doc. 5). Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant moves to dismiss this action for Plaintiff's failure to state a claim upon which relief can be granted. Plaintiff has responded to the motion and the motion became ripe for ruling when Defendant failed to file a reply brief. This action has been referred pursuant to 28 U.S.C. § 636(b) and Second Amended Special Order No. 3-301. Because the parties have not consented to have all further proceedings in this case conducted by a magistrate judge, the undersigned issues this report and recommendation and directs that this case be reassigned to Senior District Judge Sam R. Cummings in accordance with Second Amended Special Order No. 3-301.

## I. BACKGROUND[1]

In April 2017, Plaintiff, an inmate then confined in the Dick Ware Unit of the Texas Department of Criminal Justice, commenced this action pro se by filing a three-page complaint in state court. *See* Doc. 4-1. He sues Warden Linda Gonzales of that prison facility for alleged violations of Title VII, 42 U.S.C. § 2000e-2. *Id.* at 1-2. Based upon his work as an inmate at the Dick Ware

---

[1] The factual background is either uncontested or viewed in a light most favorable to Plaintiff in accordance with the applicable standard for considering motions to dismiss and conducting preliminary screening.

Unit, he claims to have been an employee of the State of Texas commencing July 15, 2015. *Id.* at 2-3. He claims that Defendant has discriminated against him by not providing typical employment benefits and engaging in "religious discrimination by having to work on the Sabbath."[2] *Id.* at 2. He asserts that as an inmate employee he is treated differently that other state employees because of his race, color, religion, and national origin. *Id.* at 3. He claims that his inmate status does not deprive him of all the rights of a state employee and that "'[p]risoners are still 'persons' entitled to all constitutional rights unless their liberty has been constitutionally curtailed by procedures that satisfy all the requirements of due process." *Id.* He seeks monetary damages. *Id.*

When Plaintiff commenced this action, he also filed a sworn statement attesting to his inability to pay the filing fee and service fees. *See* Statement of Inability to Afford Payment of Court Costs (docs. 1-2, 4-2). In June 2017, Defendant removed the action to federal court and paid the court filing fee. *See* Notice of Removal (doc. 1); Def.'s Am. Notice of Removal (doc. 4). Within a week, Defendant filed her motion to dismiss. *See* Mot. After a granted extension of time in which Plaintiff stated he is now confined in the Lynaugh Unit of the Texas Department of Criminal Justice, *see* Doc. 7, the Court received Plaintiff's response on July 20, 2017, Pl. Resp. (doc. 9). In August 2017, Plaintiff filed a notice to the Court and response to the motion. *See* Doc. 10. Defendant has not filed a reply brief.

## II. APPLICABLE LEGAL STANDARD FOR MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant moves to dismiss the Title VII claims asserted against her. That rule provides a means to dismiss asserted claims for "failure to state a claim for which relief can be granted." Every pleading that states a claim for relief must contain "a

---

[2] An attachment to the complaint shows that his "religion is sovereign." *See* Step 1 Offender Grievance Form.

2

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When ruling on a Rule 12(b)(6) motion, courts generally examine only the contents of the pleadings and any attachments thereto. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Furthermore, the courts accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). In addition, they "draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated succinctly, to survive dismissal under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

3

*Iqbal*, 556 U.S. at 678 (citations omitted). The alleged facts must "nudge" an asserted claim "across the line from conceivable to plausible" to avoid dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 570. Courts do not focus on whether the non-movant will ultimately prevail; they instead focus on whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

### III. TITLE VII

Plaintiff claims that Defendant has violated Title VII by discriminating against him because of his race, color, religion, and national origin. Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). This district has twice expressed uncertainty as to "whether Title VII applies to prisoners working at a prison job," because there is no binding precedent to guide the Court and other jurisdictions "have reached contrary conclusions." *Montgomery v. Deitelbaum*, No. 3:09-CV-2407-M-BH, 2010 WL 582146, at *2 (N.D. Tex. Feb. 18, 2010) (accepting recommendation of Mag. J.); *accord Cruz-Hernandez v. Johnson Cnty. Det. Ctr.*, No. 3:16-CV-220-M-BH, 2017 WL 927825, at *9 (N.D. Tex. Jan. 6, 2017) (recommendation of Mag. J.), *accepted by* unpub. order (N.D. Tex. Jan. 31, 2017).

In both *Montgomery* and *Cruz-Hernandez*, the court found no need to make a determinative finding whether Title VII applies to prisoners working a prison job because even assuming its applicability, the asserted Title VII claims failed. *See* 2010 WL 582146, at *2; 2017 WL 927825, at *9. The facts of this case warrant addressing the issue definitively. As pointed out in the two cited decisions, *Baker v. McNeil Island Correctional Center*, 859 F.2d 124 (9th Cir. 1988) and *Williams v. Meese*, 926 F.2d 994 (10th Cir. 1991) exemplify the conflicting conclusions reached in

other jurisdictions. *See* 2010 WL 582146, at *2; 2017 WL 927825, at *9.

The *Baker* court applied the *Conley* standard that governed Rule 12(b)(6) dismissals prior to *Iqbal* and *Twombly*. *See* 859 F.2d at 127-28. Applying that former standard, the court stressed that it was "not beyond doubt that a claim could not be proved under Title VII." *Id.* at 128. In doing so, it also noted "the EEOC had published a Notice of Policy Statement that Title VII applied to prisoners eligible for work release" and that the Ninth Circuit had previously "stated that Title VII applies in such a situation." *Id.*

*Williams* also applied the *Conley* standard, but did not stress its beyond-doubt aspect – it instead focused on the legal issue as to whether the plaintiff qualified as "an 'employee' for purposes of Title VII" as a matter of federal law. 926 F.2d at 997. In that respect, *Williams* stated:

> Whether a plaintiff is an "employee" for purposes of Title VII is a question of federal law. *Calderon v. Martin County*, 639 F.2d 271, 272-73 (5th Cir. 1981). We conclude that plaintiff is not an "employee" under either Title VII or the ADEA because his relationship with the Bureau of Prisons, and therefore, with the defendants, arises out of his status as an inmate, not an employee. Although his relationship with defendants may contain some elements commonly present in an employment relationship, it arises "from [plaintiff's] having been convicted and sentenced to imprisonment in the [defendants'] correctional institution. The primary purpose of their association [is] incarceration, not employment." Prisoner Not Protected From Racial Job Bias, 2 Empl. Prac. Guide (CCH) ¶ 6865, at 7099 (April 18, 1986) (EEOC Decision No. 86-7). Since plaintiff has no employment relationship with defendants, he cannot pursue a claim for discrimination against them under either Title VII or the ADEA.

*Id.*

Of course, the plausibility standard set out in *Iqbal* and *Twombly* replaced the no-set-of-facts standard of *Conley*. That reason alone provides some basis for not leaning too heavily on the *Baker* case given its focus on that standard. While *Williams* also applied that former standard, its greater focus on the legal definition of employee for purposes of Title VII provides more persuasiveness

5

even with the change to the plausibility standard. After discussing both cases and others, the District of Nebraska declined to follow *Baker* primarily based on the *Williams* analysis, EEOC Dec. No. 86-7, 1986 WL 38836, 2 Empl. Prac. Guide (CCH) ¶ 6865 (Apr. 18, 1986), and cases addressing the definition of employee under the Fair Labor Standards Act ("FLSA"). *See McCaslin v. Cornhusker State Indus.*, 952 F. Supp. 652, 655-58 (D. Neb. 1996).

More recently, another court found "the majority rule" line of cases, including *Williams*, more persuasive than *Baker*. *Jones v. Lockett*, No. CIV.A 08-16, 2009 WL 2232812, at *6 (W.D. Pa. July 23, 2009). In finding "the Ninth Circuit's approach in *Baker* unpersuasive," that court noted:

> In applying a test whose purpose is to determine whether a particular individual is an employee or an independent contractor to the question of whether a prisoner, applying for a work assignment in a prison context and for work actually taking place within the prison for prison pay constitutes an "employee" within the meaning of Title VII strikes this Court as simply not a useful test to apply.

*Id.* Even more recently, a different court noted:

> *Baker* hinged largely on the right-to-control test used in the context of determining whether an individual is an independent contractor or an employee. As explained by the court in *McCaslin*, 952 F. Supp. at 658, such a test is not applicable in the context of a prison setting where incarceration and the relationship between the parties are based on the need to "control individuals who have been unable or unwilling to control themselves."

*Smith v. Sumner*, No. 2:11-CV-39-MLM, 2011 WL 4342617, at *6 n.7 (E.D. Mo. Sept. 15, 2011). That same court also recognized that, instead of relying on EEOC Decision 86-7, *Baker* "relied on EEOC policy applicable to prisoners on work release." *Id.* Last year, a court noted that "[f]ederal courts have repeatedly held that Title VII, an employment discrimination statute, does not apply to inmates who are assigned to prison jobs." *West v. Goord*, No. 05-CV-447-FPG, 2017 WL 3251253, at *16 (W.D.N.Y. July 31, 2017).

These cases provide persuasive authority for not following *Baker* and finding that the test it used is not very helpful when determining whether an inmate is an employee for purposes of Title VII. This case does not involve work release. Plaintiff's factual allegations only present a Title VII claim based on his work in the prison. EEOC Decision 86-7 is directly on point. In that decision, the EEOC stressed that the individual factors relevant to an employer-employee relationship "must be considered in light of the total circumstances of the relationship between the [prisoner and the prison]." 1986 WL 38836, at *2. As aptly stated in the EEOC decision:

> That relationship arose from the [prisoner's] having been convicted and sentenced to imprisonment in the [State's] correctional institution. The primary purpose of their association was incarceration, not employment. Consequently, the [State] exercised control and direction not only over the [prisoner's] work performance but over the prisoner himself. The conditions under which he performed his job were, thus, functions of his confinement to the [State's] institution under its control. While the [prisoner] received monetary compensation for his work, that compensation was minimal . . .. Finally, although the [prisoner] was not required to work for the [State], his very job flowed from his incarceration and was dependent on his status as a prison inmate. Considering these circumstances as a whole, we are persuaded that the reality of the work relationship between the [State] and the [prisoner] was not one of employment.

*Id.* at *3. The EEOC thus found that the inmate was not an employee within the meaning of Title VII. *Id.* It also noted that its finding was "consistent with the Department of Labor's interpretation of the term 'employee' under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201," which "defines 'employee' in virtually the same words as does Title VII." *Id.*

Based the majority position, which is based largely on the analysis in *Williams* and EEOC Decision 86-7, the plaintiff in this case is not an employee of the State for purposes of Title VII. *See, e.g., Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013) (per curiam); *Iheme v. Smith*, 529 F. App'x 808, 809 (8th Cir. 2013) (per curiam); *West*, 2017 WL 3251253, at *16; *Stile v. Fed.*

*Bureau of Prisons*, No. CV 16-3832 (RMB), 2016 WL 8710396, at *6 (D.N.J. Aug. 26, 2016); *Smith*, 2011 WL 4342617, at *6; *Gooding v. United States*, No. 3:09-CV-23, 2010 WL 925793, at *3-4 (E.D. Tenn. Mar. 9, 2010); *Jones*, 2009 WL 2232812, at *6; *McCaslin*, 952 F. Supp. at 655-58. This finding and the legal analysis in *Williams* comports with Fifth Circuit decisions holding that inmates do not qualify as an employee for purposes of the FLSA. *See Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) (per curiam) (holding "that a prisoner doing work in or for the prison is not an 'employee' under the FLSA and is thus not entitled to the federal minimum wage").

For these reasons, the Court should find that, as a matter of federal law, Plaintiff is not an employee of the State under the facts alleged in this case. Accordingly, it should find no plausible claim under Title VII and dismiss this action to the extent Plaintiff asserts such claims.

## IV. INVOLUNTARY SERVITUDE

Although Plaintiff's complaint appears to only assert claims under Title VII, Defendant also argues that Plaintiff has no plausible constitutional claim for involuntary servitude. Mot. at 3. "Compelling an inmate to work without pay does not violate the Constitution." *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) (per curiam). Not only does the Thirteenth Amendment permit "involuntary servitude as punishment after conviction of a crime, *see* U.S. Const. amend XIII, § 1," the Fifth Circuit "has held that compensating prisoners for work is not a constitutional requirement but, rather, is by the grace of the state." *Murray v. Miss. Dep't of Corr.*, 911 F.2d 1167, 1167-68 (5th Cir. 1990) (per curiam) (citation and internal quotation marks omitted). Prisoners "sentenced to incarceration cannot state a viable Thirteenth Amendment claim if the prison system requires them to work." *Ali v. Johnson*, 259 F.3d 317, 317 (5th Cir. 2001).

8

In response to the motion, Plaintiff argues that, although he was paid for his work, he did not receive all benefits that State employees typically receive. Pl. Resp. at 3. It thus appears that he not asserting any involuntary servitude claim. Nevertheless, for the reasons stated, the Court should find that Plaintiff has no plausible constitutional claim for involuntary servitude and dismiss this action to the extent Plaintiff asserts such a claim.

## V. OTHER CLAIMS AND PRELIMINARY SCREENING

In response to the motion to dismiss, Plaintiff contends that Defendant does not address his claim of "discrimination of Religion and Religious Practice." Pl. Resp. at 2. He claims that his Religion – "Sovereign" – forbids him from working on the Sabbath. *Id.* Defendant does not directly address any religion-based claim, but to the extent the claim arises under Title VII, it fails to state a plausible claim for the reasons addressed in the Title VII section.

Plaintiff's response to the motion suggests that he believes he has asserted a non-Title VII violation with respect to being forced to work on the Sabbath. Given that response and the long-standing principle that courts liberally construe pleadings of a pro se party, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court should consider whether Plaintiff has asserted any non-Title VII claim not addressed in the motion to dismiss. Even if Plaintiff has asserted a claim in his complaint that Defendant failed to address in her motion to dismiss, any such claim is subject to preliminary screening under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Although Defendant paid the applicable filing fee upon removal to federal court, § 1915(e)(2)(B) – under which a district court may dismiss *sua sponte* an *in forma pauperis* proceeding if it concludes that the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief – applies to cases removed to federal court in which a plaintiff

sought to proceed without prepayment of fees in state court. *See Phillips v. City of Dallas*, No. 3:14-CV-3131-M, 2015 WL 233336, at *4 (N.D. Tex. Jan. 14, 2015) (accepting recommendation of Mag. J.); *Tsuchiya v. Texas*, No. 4:14-CV-64-O, 2014 WL 1329127, at *1 (N.D. Tex. Mar. 5, 2014) (recommendation of Mag. J.), *adopted by* unpub. order (N.D. Tex. Apr. 1, 2014). Additionally, because Plaintiff sues a governmental officer or employee, the screening provision of § 1915A applies "regardless whether the prisoner is proceeding *in forma pauperis*." *Ruston v. Dallas Cnty.*, No. 3:07-CV-1076-D, 2008 WL 958076, at *2 (N.D. Tex. Apr. 9, 2008). The filing of a motion to dismiss by a defendant does not eliminate the screening requirements. *See id.* at *2-3. Indeed, the courts may screen a case at any time. *See* 28 U.S.C. §§ 1915(e)(2) (requiring courts to "dismiss the case at any time if the court determines that" it is warranted under the screening provision); 1915A(a) (requiring a screening review).

Plaintiff's complaint asserts only a Title VII claim on its face. The minimal mention of the Constitution in the complaint is insufficient to state a claim under the Constitution. Nevertheless, in response to the motion to dismiss, Plaintiff relies on 42 U.S.C. § 2000cc(a) and *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) for his religious-based claim. Pl.'s Resp. at 1-2. That case involved the "Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment." 508 U.S. at 531. Plaintiff had cited that case in his complaint along with *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). *Gonzalez* addressed the Religious Freedom Restoration Act of 1993 ("RFRA"). 546 U.S. at 423. In September 2000, RFRA was restated as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc–5. *See James v. Price*, No. 2:03-CV-0209, 2005 WL 483443, at *2 (N.D. Tex. Mar. 2, 2005) (recommendation of Mag. J.),

*adopted by* 2005 WL 701042 (N.D. Tex. Mar. 25, 2005).

In light of his response to the motion to dismiss, it appears that Plaintiff relies on the Free Exercise Clause of the First Amendment in addition to RLUIPA as a basis for his religion-based claim that Defendant required him to work on the Sabbath, contrary to his religious beliefs. Because Defendant does not address these claims in the motion to dismiss, the Court should conduct a preliminary screening of the religion-based claims.

Conducting that screening, the Court should find that Plaintiff fails to state a claim upon which relief can be granted under either theory.

> To the extent that his complaint may be read as raising a claim under the Religious Land Use and Institutionalized Persons Act, such a complaint is without merit; the Fifth Circuit has held that this Act does not create a cause of action for damages against Texas or . . . individual defendants in their official capacities, nor does it create a cause of action against . . . prison officials in their individual capacities.

*Finney v. Marshall*, No. 9:12-CV-4, 2012 WL 5931744, at *2 (E.D. Tex. Nov. 27, 2012) (citing *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011)). Because any claim under RLUIPA for monetary damages against the Warden in either her individual or official capacities necessarily fails, the Court should find that Plaintiff has stated no claim upon which relief can be granted under RLUIPA.

Furthermore, although Plaintiff's religion-based "claim for monetary damages is properly cognizable under the Civil Rights Act, 42 U.S.C. § 1983," which governs claimed violations of the right of free exercise of religion, *id.* at *3, Plaintiff does not satisfy the standards for stating such a claim. While the Supreme Court has long recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), and all prisoners must be afforded reasonable opportunities "to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty,"

11

*Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam); *accord Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986), lawful incarceration may limit or restrict the exercise of constitutional rights based on "valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security," *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

To "establish a violation of the free exercise clause, plaintiff must show the defendant burdened his practice of religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Massingill v. Livingston*, No. 1:05-CV-785, 2006 WL 2571366, at *4 (E.D. Tex. Sept. 1, 2006) (adopting recommendation of Mag. J. that cites *Turner v. Safley*, 482 U.S. 78, 89 (1987) and *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997)), *aff'd*, 277 F. App'x 491 (5th Cir. 2008). Not only does the State have "a legitimate penological interest" in "[r]equiring inmates to work," but the fact that Plaintiff "was required to work on [the Sabbath] does not itself show a violation of the Constitution" and such a "claim on this point is without merit." *Finney*, 2012 WL 5931744, at *3.

For these reasons, the Court should find that Plaintiff has stated no claim upon which relief can be granted under RLUIPA or the First Amendment.

## VI. LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing a complaint. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Leave to amend is not required, however, when plaintiffs have already pled their "best case." *Id.* Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

It is recommended that the Court dismiss this action without leave to amend unless – within

the time for objecting to this recommendation – Plaintiff provides a valid basis for concluding that he has not pled his best case. This recommendation addresses claims asserted by Plaintiff and clarified through his response to the motion to dismiss even though the motion to dismiss did not address them. Based upon his complaint and that response, it appears that Plaintiff has pled his best case.

## VII. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Defendant's Motion to Dismiss (doc. 5) and dismiss any claim that Plaintiff asserts under Title VII, 42 U.S.C. § 2000e-2(a), or based upon involuntary servitude. It is further **RECOMMENDED** that the Court conduct the preliminarily screening required by 28 U.S.C. §§ 1915(e) and 1915A and, pursuant to that screening, dismiss any claim under the Free Exercise Clause of the First Amendment or under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc–5, on grounds that Plaintiff has failed to state a claim upon which relief can be granted. Because these recommended dismissals dispose of all claims apparent from the complaint filed in this action, the Court should **DISMISS** this action in its entirety and such dismissal should be without leave to amend unless Plaintiff provides a valid basis for the Court to conclude that he has not pled his best case. If the dismissal of this action is without leave to amend, the Court should dismiss the action with prejudice and specify that this dismissal qualifies as a "strike" under 28 U.S.C. § 1915(g). In light of the recommended dismissal, the undersigned directs the Clerk of Court to reassign this case to Senior District Judge Sam R. Cummings in accordance with the Second Amended Special Order No. 3-301.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this** 2nd **day of February, 2018.**

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**